NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERT O., *Appellant,*

*v.*

MARY B., A.B., *Appellees.*

No. 1 CA-JV 18-0355
FILED 3-5-2019

Appeal from the Superior Court in Maricopa County
No. JS17394
The Honorable Glenn A. Allen, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Fadell, Cheney & Burt, P.L.L.C., Phoenix
By Gary A. Fadell, Robert J. Ross
*Counsel for Appellee Mary B.*

## MEMORANDUM DECISION

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

**B E E N E**, Judge:

**¶1**　　　　Robert O. ("Father") appeals a superior court order terminating his parental rights to his biological child A.B.　Because Father has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY[1]

**¶2**　　　　A.B. was born in March 2008 and lived with her mother, Shirley B. ("Mother"), and Mother's parents, Mary and Christopher ("Grandparents"), since birth.[2]　Though initially involved in A.B.'s life, Father concedes he has not visited or spoken with his daughter since July 2010.　Grandmother testified it has been even longer, since June 2009.　Father ended his relationship with Mother and married his current wife in early 2010.　When Mother passed away in August 2017, Father still did not contact A.B., or Grandmother, although he knew the contact information and address.

**¶3**　　　　Grandmother testified that Father was never prevented from having a relationship with A.B., and that Mother contacted Father in March 2010, and again in December 2010, explaining how he could best contact A.B.　Father testified to the contrary, describing how he tried to have a

---

[1]　　　"[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

[2]　　　Grandparents served as A.B.'s guardians since March 2009, when Mother and Father, both having no employment at the time, signed a temporary guardianship authorization for A.B. to be placed on Grandfather's health insurance plan.　The guardianship documents were delivered to the superior court and formalized as a permanent guardianship in April 2009.

relationship with A.B. Paternal grandmother and Father's current wife also testified that Grandparents pushed Father out of A.B.'s life.

**¶4** In their petition to terminate Father's parental rights, Grandparents alleged two statutory grounds for termination: 1) abandonment; and 2) neglect and willful abuse. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (2).

**¶5** After a three-day termination hearing, the superior court granted Grandparents' petition, finding Father abandoned A.B.[3] Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶6** Father argues the superior court erred by: 1) concluding that reasonable evidence supported its finding that Father abandoned A.B.; 2) finding that termination of Father's parental rights was in A.B.'s best interests; and 3) failing to set aside the permanent guardianship, which Father contends is void for lack of jurisdiction.

**¶7** The right to parent one's child is fundamental but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). The superior court may terminate parental rights if it finds, "by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533," *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and by a preponderance of the evidence that termination is in the child's best interests, *Kent K.*, 210 Ariz. at 284, ¶ 22. Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We will reverse a termination order only for an abuse of discretion or clearly erroneous findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

---

[3] The superior court found that Grandparents failed to prove the neglect and abuse ground. *See* A.R.S. § 8-533(B)(2).

### I. Reasonable Evidence Supported the Superior Court's Finding that Father Abandoned A.B.

**¶8** Father argues the superior court abused its discretion because 1) no reasonable evidence supported its finding of abandonment, 2) the court violated Father's due process rights when it denied his request to visit with A.B., and 3) the court failed to address Father's parental fitness.

**¶9** "Abandonment" is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8–531(1).

**¶10** We assess abandonment objectively based on the parent's conduct, not subjective intent. *Michael J.*, 196 Ariz. at 249-50, ¶ 18. "What constitutes reasonable support, regular contact, and normal supervision varies from case to case." *Id.* at 250, ¶ 20 (citation omitted). The court should also review "whether the parent has taken steps to establish and strengthen the emotional bonds linking him or her with the child." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 21 (App. 2010); *see also Michael J.*, 196 Ariz. at 251, ¶ 25 ("The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity.").

**¶11** Here, Father provided no support to A.B. for at least the last eight years. Although Father recently sent several checks worth $25.00 on a monthly basis, his attempt was minimal and only in response to these termination proceedings. Father admitted during the hearing that he has had no contact with A.B. since July 2010; Father did not contact A.B. even after Mother died in August 2017.

**¶12** Although Father argues Grandmother prevented him from having a relationship with A.B., the record says otherwise. Father knew how and where to contact A.B., but he never did. Moreover, the court did not find Father's testimony to be credible. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. Father took no steps to establish an emotional bond with A.B. *See Kenneth B.*, 226 Ariz. at 37, ¶ 21. He did not even assert his legal rights until

4

Grandparents initiated this legal action. *See Michael J.*, 196 Ariz. at 250-51, ¶¶ 22, 25. ("[W]hen circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary.") (quotation omitted).

**¶13** Father further argues that the court's denial of his request to participate in therapeutic visits with A.B. was "analogous to terminating Father's parental right without due process of a trial," citing *Maricopa County Juvenile Action No. JD-5312*, 178 Ariz. 372, 375 (App. 1994) ("[A]n order terminating visitation is analogous to an order terminating the parent-child relationship because it deprives [a parent] of [his or] her right of association."). The record, however, provides substantial evidence of Father's abandonment for over eight years before this action was commenced. Moreover, no visitations were terminated here, as they were in *Juvenile Action No. JD-5312*, and Father was provided with due process of law. Father's argument, thus, has no merit.

**¶14** Father also argues the court failed to consider his ability to parent A.B. before finding abandonment and terminating his parental rights. Father's ability to parent, however, is not relevant to the statutory ground of abandonment. *See* A.R.S. § 8-533(B)(1). The record fully supports the superior court's finding of abandonment.

## II. Sufficient Evidence Supported the Superior Court's Best-Interests Finding.

**¶15** Father argues that reasonable evidence does not support the superior court's finding that termination of Father's parental rights was in A.B.'s best interests.

**¶16** In the best-interests inquiry—a fact-specific, case-by-case determination primarily focused on the child—the court balances a parent's interest in maintaining a relationship with his or her child (diluted by the existence of a termination ground) against the child's interest in a safe and stable home life. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶¶ 13, 15 (2016); *Kent K.*, 210 Ariz. at 286, ¶ 35. Termination must affirmatively benefit the child or eliminate a detriment of the parental relationship. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016). In making the best-interests determination, the superior court may consider evidence that the child is adoptable or that an existing placement is meeting the child's needs. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19. Another factor the court "may properly consider in favor of severance is the immediate availability of an adoptive

placement." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

¶17 Here, the superior court found that A.B. lived with her Grandparents since birth in 2008, they are providing a "loving and nurturing home," and A.B. feels "comfortable and . . . safe" in their family. Grandparents are also "ready, willing and able to adopt" A.B. The superior court further found that removing A.B. from the "only home she's ever known and placing her with her [F]ather, who is a stranger to her, would be a detriment to her."

¶18 The superior court's best-interests finding was supported by sufficient evidence. *See Kent K.*, 210 Ariz. at 284, ¶ 22; *Audra T.*, 194 Ariz. at 377, ¶ 5.

## III. The Issue of the Permanent Guardianship's Validity is Moot.

¶19 Father asserts that the superior court's order granting Grandparents a permanent guardianship of A.B. is void for lack of jurisdiction because Father was not properly served with process.

¶20 Whether Father was properly served regarding the permanent guardianship has no practical effect or relevance to the court's finding that Father abandoned A.B. Therefore, this issue is moot. *See Arpaio v. Maricopa Cty. Bd. of Supervisors*, 225 Ariz. 358, 361, ¶ 7 (App. 2010) ("A case becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties.") (quotation omitted).

## IV. Attorneys' Fees on Appeal.

¶21 Neither party requested attorneys' fees incurred on appeal, and we award none. Grandmother, however, is entitled to recover her costs on appeal pursuant to A.R.S. § 12-342 upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights to A.B.



AMY M. WOOD • Clerk of the Court
FILED: AA