NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANTHONY L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.E., A.E., *Appellee*s.

No. 1 CA-JV 18-0379
FILED 3-19-2019

Appeal from the Superior Court in Maricopa County
No. JD34214
The Honorable Lindsey G. Coates, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**C A M P B E L L**, Judge:

**¶1**        Anthony L. ("Father") appeals the superior court's order terminating his parental rights to his two children based on the statutory grounds of abandonment and the length of his incarceration, arguing the court incorrectly weighed the evidence against him. Because reasonable evidence supports the court's order, we affirm.

## BACKGROUND

**¶2**        Father is the biological father of J.E., born in 2005, and the alleged biological father of A.E., born in 2007. Father was incarcerated for a conviction of witness intimidation in 2006 and incarcerated again in 2008 for an assault conviction. After his release in 2012, Father did not visit either child until 2016, when Mother separated from her boyfriend. At that point, Father moved into the home with Mother and the children for about seven months until he was arrested and extradited to Ohio in early 2017. There, Father was convicted of theft and receiving stolen property and sentenced to a prison term of two years and six months.

**¶3**        In May 2017, the Department of Child Safety removed the children from Mother and filed a dependency petition regarding both Mother and Father. Father did not contest the allegations, and the court found the children dependent as to him. In February 2018, the children were placed with their maternal grandparents in Colorado. In March, DCS moved to terminate Father's parental rights based on the grounds of abandonment the length of his incarceration. After an evidentiary hearing, the superior court terminated Father's parental rights, finding that DCS had met its burden of proof on both grounds and that termination was in the children's best interests.

## DISCUSSION

**¶4**        The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship based

on clear and convincing evidence of at least one of the statutory grounds listed in A.R.S. § 8-533(B). *Id.* at 248, ¶ 12. The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶5** We review a termination order for an abuse of discretion, affirming unless no reasonable evidence supports the superior court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). The superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," and we view the facts in the light most favorable to sustaining the court's decision. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280-282, ¶¶ 4, 13 (App. 2002).

**¶6** Under A.R.S. § 8-533(B)(1), "evidence sufficient to justify the termination of the parent-child relationship shall include" that "the parent has abandoned the child." Under A.R.S. § 8-531(1), "abandonment" means:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

No "bright line formula [has] developed to determine whether a parent abandoned an existing relationship." *Pima Cty. Juv. Sev. Action No. S-114487*, 179 Ariz. 86, 96 (1994). Abandonment is measured, "not by a parent's subjective intent, but by the parent's conduct." *Michael J.*, 196 Ariz. at 249, ¶ 18.

**¶7** Incarceration provides neither a legal defense to abandonment nor alone justifies termination based on abandonment, but it is one factor to consider in evaluating parents' ability to perform their parental obligations. *Id.* at 250, ¶ 22. "[W]hen 'circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary.'" *Id.* (citation omitted). Courts "should look to see whether the parent has taken steps to establish and strengthen the emotional bonds linking him or her with the child." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 21 (App. 2010).

**¶8**          Father argues the superior court erred by finding that he abandoned his children. He contends the court's ruling was based, "in large part, on [his] lack of relationship with the children prior to 2016," but argues he "remedied that presumptive abandonment" by living with the children for seven months and by maintaining contact when he was once again incarcerated in Ohio in 2017. He points to his testimony that he sent the children numerous cards and gifts and participated in various treatment programs while incarcerated and argues that the court's ruling suggests it is impossible to "cure abandonment."

**¶9**          The court's ruling was not merely based on that period of "presumptive abandonment." Rather, the court made detailed findings cataloging Father's overall attempts to create a parental relationship throughout the children's lives as well as his actions since his most recent incarceration. For instance, the court found that Father had not provided the children with any financial support during his long absences from their lives. Father claimed that Mother's jealous boyfriend kept him from seeing the children between 2012 and 2016, but Father never reported the custodial interference to law enforcement nor initiated any court proceeding to try to obtain custody or visitation. Further, throughout the dependency, the children still referred to Mother's previous boyfriend as their dad, and the oldest child reported that contact from Father was minimal. Father admitted that during his most recent incarceration, he had been instructed to send the children any correspondence through the DCS case manager, but the case manager testified that Father had only done so twice. Although Father provided conflicting testimony that he sent more cards and gifts to the children, "[t]he resolution of conflicting evidence is 'uniquely the province of the juvenile court,'" and we do not reweigh the evidence on appeal. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citation omitted).

**¶10**          The record reasonably reflects that under the definition of "abandonment" in A.R.S. § 8-531(1), Father abandoned his children: he was absent for most of the children's lives; he did little to provide any consistent support to the children throughout their lives; he failed to assert his parental rights vigorously and maintain a normal parental relationship; he had not established a strong existing bond with the children by the time of his most recent incarceration; and he did little to communicate with the children during the more than year-long period the dependency was pending. Therefore, the superior court did not abuse its discretion in ruling that Father abandoned the children.

¶11 Father also challenges the superior court's finding by a preponderance of the evidence that termination was in the children's best interests, arguing that the court unfairly assessed the facts. Termination of a parent-child relationship is in a child's best interests "if the child would be harmed if the relationship continued or would benefit from the termination." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016) (citation omitted). It is well-established that a child's "prospective adoption is a benefit that can support a best-interests finding," *id.*, and factors to consider include whether (1) "an adoptive placement is immediately available," (2) "the existing placement is meeting the needs of the child," and (3) "the children are adoptable," *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010).

¶12 Here, the superior court made detailed findings about the children's best interests and how they would benefit from the termination. During the evidentiary hearing, the DCS caseworker testified to the following: the children were residing with their maternal grandparents in Colorado; the grandparents were willing to adopt both of the children, keeping them together; the grandparents were meeting all of the children's needs; and the children would benefit from the permanency and stability adoption would bring. This evidence reasonably supports the court's decision that termination was in the children's best interests.

¶13 Because we affirm the superior court's termination order based on the ground of abandonment, we need not address Father's arguments regarding the statutory ground of the length of his incarceration. *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**CONCLUSION**

¶14 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

5