127 P.3d 910

**HANSON AGGREGATES ARIZONA, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**RISSLING CONSTRUCTION GROUP, INC.; Western Surety Company, a foreign corporation, Defendants–Appellees.**

No. 1 CA–CV 03–0633.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 2, 2006.

---

Jeffery M. Hall, P.L.C. By Jeffery M. Hall and Snell & Wilmer, L.L.P. By James J. Sienicki, Martha E. Gibbs, Phoenix, Attorneys for Plaintiff–Appellant.

Burch & Cracchiolo, P.A. By Michael S. Dulberg, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

SNOW, Judge.

¶ 1 Hanson Aggregates Arizona, Inc. appeals the trial court's dismissal of its action against a surety bond posted by Rissling Construction Group, Inc. and Western Surety Company. The trial court dismissed the claim finding that the bond had been discharged and Rissling and Western released due to Hanson's failure to initiate an action against the bond within six months of recording its lien. For the following reasons, we reverse the trial court's judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Hanson supplies ready-mix concrete materials and aggregates for construction projects. In August 2000, Pioneer Concrete, Hanson's predecessor corporation,[1] and Aggressive, Rissling's concrete subcontractor for a project in Tempe, entered a credit agreement. Under the agreement, Hanson supplied ready-mix concrete materials and aggregates to Aggressive for several projects, including the Tempe project.

¶ 3 On August 26, 2002 Hanson recorded with the county recorder's office a mechanics' lien on the Tempe project property to secure payment of the $56,509.62 owed by Aggressive for materials supplied to that project. On December 17, 2002, Western issued a lien-discharge bond to Rissling, the contractor on the Tempe project, in the statutorily required amount of $84,764.43. On January 2, 2003, Rissling sent Hanson, by certified mail, a copy of the surety bond that had not yet been recorded. Four days later on January 6, 2003, Rissling recorded the bond with the county recorder's office. Neither Rissling nor Western served Hanson with a copy of the bond after it was recorded. On February 14, 2003, Hanson learned through correspondence from Rissling's counsel that the lien-discharge bond had been recorded.

¶ 4 On April 2, 2003, Hanson filed a complaint against Rissling and Western to recover against the lien-discharge bond. The Defendants on the bond moved to dismiss the complaint claiming that the bond was discharged pursuant to Arizona Revised Statutes ("A.R.S.") section 33–1004(D)(1) (2000) because Hanson failed to commence its suit against the discharge bond within six months

---

1. Hanson Aggregates Arizona purchased Pioneer    Concrete in August 2000.

of recording the lien. The court granted the motion and Hanson timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 5 On appeal, the parties dispute whether the trial court correctly interpreted A.R.S. § 33–1004—the statute governing lien-discharge bonds. The question is one of statutory construction. We thus review the trial court's decision *de novo*. *Scruggs v. State Farm Mut. Auto. Ins. Co.*, 204 Ariz. 244, 248, ¶ 17, 62 P.3d 989, 993 (App.2003).

■ ¶ 6 In interpreting a statute, we are required to read the statute as a whole and give meaningful operation to all of its provisions and ensure an interpretation that does not render meaningless other parts of the statute. *Welch–Doden v. Roberts,* 202 Ariz. 201, 206, ¶ 22, 42 P.3d 1156, 1171 (App.2002); *see also Wylie v. Douglas Lumber Co.,* 39 Ariz. 511, 8 P.2d 256 (1932).

### A. The Lien-discharge Statute

¶ 7 The discharge statute provides a method for persons with an interest in property subject to a lien, including a contractor such as Rissling, to discharge a lien against the property. To do so the interested party obtains a surety bond in favor of the lien claimant in an amount one and one-half times the amount of the claimed lien and records it with the county recorder. A.R.S. § 33–1004(B). After the bond is recorded, the lien is discharged and the claimant must pursue the bond for the lien payment as opposed to foreclosing on the property subject to the lien. A.R.S. § 33–1004(A), (E); *Hatch Companies Contracting, Inc. v. Ariz. Bank,* 170 Ariz. 553, 557, 826 P.2d 1179, 1183 (App.1991) ("The obvious policy of the lien discharge statute is to give property owners the ability to free their property from liens.").

¶ 8 The Defendants on the bond claim (collectively "Rissling") argued below, and the trial court agreed, that the statute required Hanson to assert its claim against the bond that discharged the lien within six months of the time Hanson filed its lien, and

because it did not, the bond was discharged. However, Rissling misreads the statute.

¶ 9 Arizona Revised Statutes § 33–1004(D)(1) specifies that "[t]he bond shall be discharged and the principal and sureties released upon ... [t]he failure of the *lien claimant* to commence a suit within the time allowed pursuant to § 33–998." A.R.S. § 33–1004(D)(1)(emphasis added). Section 33–998 specifies that a statutory lien like the one granted Hanson continues for a period of six months after it is recorded. Thus, § 33–1004(D)(1) incorporates into the lien-discharge statute the underlying period for which the lien is valid and prior to which suit must be brought to foreclose the lien. Once the lien is discharged by the recording of a discharge bond prior to expiration, however, the statute sets forth several supplemental provisions that regulate the rights and responsibilities of the parties in claims under the bond.

¶ 10 Of relevance to this case, the statute requires the bond principal to serve the discharge bond on the claimant under the now discharged lien. A.R.S. § 33–1004(C) ("The principal on such bond shall, upon recordation thereof with the county recorder, cause a copy of the bond to be served within a reasonable time upon the lien claimant."). If service of the lien is not accomplished as the lien-discharge statute requires, then "the claimant shall have six months after the discovery of such bond to commence an action thereon, except that no action may be commenced on such bond after two years from the date it was recorded as provided in this section." A.R.S. § 33–1004(F).

¶ 11 Rissling argues that, as opposed to this interpretation the statute must be read to require the filing of an action within six months in all cases because there is no policy rationale justifying a longer statute of limitations for commencing actions against a bond that has been recorded "unbeknownst to the lien claimant, but not served, than if there had been no lien discharge bond at all" in which case the claimant would be required to foreclose its lien. We disagree.

¶ 12 It is advantageous for those with an interest in property to rid their property of liens. The grant of an interest in the under-

lying real estate to the claimant provides great leverage to a subcontractor in achieving payment of his claim. Such leverage is diminished by the substitution of a bond in place of the lien. Because the statute provides that a lien claimant loses its lien upon the recordation of the bond whether or not service is accomplished, *see* A.R.S. § 33–1004(A), a lien claimant may not even be aware that he has lost his lien claim and has separate remedies. Under such circumstances the claimant on the discharged lien might well pursue a meritless suit to foreclose upon the lien against those with an interest in property that has been discharged. To protect both those with an interest in the real property upon which the lien has been discharged, and the claimant on the former lien, the statute requires the principal purchasing the bond to serve it on the lien claimant.

¶ 13 However, the filing of the bond discharges the lien whether the claimant is aware of the bond or not. Thus, absent a reason for the bond principal to serve the lien claimant with the bond, there would be little motivation for it to do so. The statute provides such a reason by extending the period in which the claimant may pursue its claim against the bond principal and surety if the bond principal fails to accomplish service of the bond as specified in the statute. This is a sufficient rationale to justify a longer period for asserting claims against the bond in the absence of service.

¶ 14 We read the statute as a whole to allow a bond claimant additional time to commence an action on the bond if the claimant is not served with the bond by the principal as A.R.S. § 33–1004(C) requires. The remaining question in this appeal is whether Rissling served Hanson with the bond as required by statute.

### B. Service of the Bond

¶ 15 The statute obligates the principal securing a lien-discharge bond "upon recordation thereof with the county recorder [to] cause a copy of the bond to be served within a reasonable time upon the lien claimant." A.R.S. § 33–1004(C). Hanson argues that Rissling never served it in compliance with subsection (C) of the statute because it served Hanson with a copy of a bond that had not been recorded.

¶ 16 Rissling argues that it is not required to serve Hanson with a copy of the recorded bond to be in compliance with the requirements of § 33–1004(C). Rather, it asserts, the service requirements in the lien-discharge bond statute should be interpreted *in pari materia* with the service requirements for mechanics' and materialmen's liens generally. *See Ruth Fisher Elementary Sch. Dist. v. Buckeye Union High Sch. Dist.*, 202 Ariz. 107, 110, ¶ 12, 41 P.3d 645, 648 (App. 2002). The statute pertaining to the service of a mechanics' lien does not require service of the *recorded* notice and claim of lien, but rather allows service of a copy of the same notice and claim of lien that was recorded. To:

> [S]ecure the lien provided for in this article, every person claiming the benefits of this article, ... shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder ... and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement.

A.R.S. § 33–993 (2000). Thus, construing the statute governing the service of a lien-discharge bond with the statute governing service of a mechanics' lien, Rissling argues that it was under no obligation pursuant to § 33–1004(C) to serve Hanson with a copy of the recorded bond.

¶ 17 While we agree that § 33–1004(C) does not require service of a recorded bond, the statute nonetheless specifies that the lien claimant not be served with a copy of the bond until the bond is recorded. This is not a meaningless nuance of timing. As the statute specifies, it is the recording of the bond with the county recorder and not its service on the lien claimant that discharges the underlying lien and substitutes recourse against the bond in its place. A.R.S. § 33–1004(A), (E). However, the statute also affords a claimant, once served with the bond, ninety days after being served with a discharge bond to bring a claim against the bond principals and sureties. A.R.S. § 33–

1004(C), (D)(2). That time begins to run after the lien claimant is served with the bond.

¶ 18 If the statute allowed the service of an unrecorded bond to be effective before the lien had been discharged and the new remedy existed, it would start the ninety-day period provided the claimant to assert its new remedy before the lien had been discharged in favor of the bond. Such an anomaly in the statute could be subject to manipulation to deprive a claimant of a fair chance to assert its new remedies under the bond. The statute prevents this result by mandating that service occur no earlier than the date the bond is recorded. Thus, whether the copy of the bond served itself indicates that the bond was recorded, effective service cannot be accomplished until the bond is recorded.

¶ 19 Rissling acknowledges that "[o]n January 2, 2003, an unrecorded copy of the lien-discharge bond was mailed by certified mail to Hanson, and the lien-discharge bond was not actually recorded until January 6, 2003." Because under the lien statutes "[s]ervice is complete at the time of the deposit of notice in the mail," A.R.S. § 33–992.01(F) (Supp. 2005), Rissling accomplished service prior to the time it recorded the bond. *See Columbia Group, Inc. v. Jackson,* 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986) (lien statutes should be "liberally construed in favor of materialmen" and laborers); *Kerr–McGee Oil Indus., Inc. v. McCray,* 89 Ariz. 307, 310, 361 P.2d 734, 736 (1961) (same). There is no indication in the record that Rissling served Hanson with a copy of the bond after recording.

¶ 20 Because the statute requires that the bond be served "upon recordation" or thereafter, Rissling did not accomplish service as the lien-discharge statute requires. Hanson thus is entitled to assert its bond claim against Rissling anytime within six months after discovering the existence of the discharge bond. A.R.S. § 33–1004(F). Because Hanson filed suit against Rissling and the surety on April 2, 2003, it brought suit within six months of discovering the bond. It is, therefore, entitled to assert its claims against Rissling and Western. Because we reverse and remand on this basis we do not address Hanson's alternative arguments.

¶ 21 Both parties request an award of attorneys' fees on appeal pursuant to A.R.S. § 33–998(B), which permits the court to award attorneys' fees to the successful party in "any action to enforce a lien granted under this article." Hanson also requests an award of attorneys' fees pursuant to § 33–1004(B). Such an award, however, would be premature.

¶ 22 Rissling does not concede that Hanson's lien was perfected; it only concedes the facts pertinent to the filing of Hanson's notice of claim of lien and Rissling's acquisition, recording and certified mailing of the discharge bond. It is not yet clear, therefore, that Hanson is entitled to recover against the lien-discharge bond or is otherwise a successful party in an action to enforce a lien. Further, neither party has briefed whether, assuming an award of attorneys' fees were merited, those fees would be included in "the judgment which would have been rendered against the property for the enforcement of the lien" under § 33–1004(B). The record on these issues is not sufficient for us to make an independent determination on them at this point in the litigation. Therefore, we decline to award attorneys' fees on appeal without prejudice to the trial court's consideration of those fees if it determines that an award of fees is appropriate.

## CONCLUSION

¶ 23 For the foregoing reasons, we reverse the trial court's judgment and its award of attorneys' fees to Rissling and Western and remand for proceedings consistent with this opinion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and STEPHEN M. DESENS, Judge *.

* The Honorable Stephen M. Desens, Judge *Pro*    *Tempore* of the Court of Appeals, Division One,

has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 31, and A.R.S. §§ 12–145 through 12–147 (2003).