243 P.3d 636 (2010)
KENNETH B. and Kelly B., Appellants,
v.
TINA B., Appellee.
No. 1 CA-JV 10-0044.
Court of Appeals of Arizona, Division 1, Department B.
November 18, 2010.
*637 Riggs, Ellsworth & Porter, P.L.C. by Michael R. Ellsworth, Show Low, Attorneys for Appellants.
Harlan W. Green, Payson, Attorney for Appellee.

OPINION
JOHNSEN, Judge.
¶ 1 This appeal requires us to consider the statutory meaning of "abandonment" in the context of an unusual non-custodial parenting arrangement. Because the superior court apparently misapplied the law in deciding whether the mother abandoned her children, we vacate the court's decision in part and remand.

FACTS AND PROCEDURAL HISTORY[1]
¶ 2 Tina and her former husband divorced in March 2004, when their daughter was two and their son was 15 months old. For more than nine months prior to the dissolution, the children lived primarily with Kenneth and Kelly, who are Tina's brother and sister-in-law. At the time of the dissolution, Tina and her former husband ("Father") agreed they would share joint legal custody of the two children but that Kenneth and Kelly would have "physical care, control and custody of the . . . children until further order of the court." The dissolution decree incorporated the settlement agreement and provided that Father would pay $1,000 a month to Kenneth and Kelly in child support "until further order of the court." The decree further required Father to provide medical and dental insurance for the children.
¶ 3 In early 2009, approximately six years after the children came to live with Kenneth and Kelly, Tina moved for change of physical custody. Shortly thereafter, Kenneth and Kelly filed a petition for termination of Tina's parental rights.[2] Their petition alleged Tina had abandoned the children, pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1) (2009).[3]
¶ 4 Over two days of trial, the court heard evidence that Tina did not visit the children regularly during the first three years of the arrangement even though her visiting rights were unlimited at the time. When the children were approximately two and three years old, Tina moved nearly four hours' drive away. After relocating, Tina visited the children intermittently. During one visit in 2006, Tina absconded with the children. The police were called, a search was launched and an "Amber alert" was issued. Tina heard the Amber alert on the radio and fled with the children. Later that day, Tina and the children were found at a women's shelter in Phoenix. Tina pled guilty to custodial interference and Kenneth and Kelly obtained a restraining order prohibiting any contact between Tina and the children.
¶ 5 After the restraining order had been in place for about six months, Tina unsuccessfully petitioned the court to have the order lifted so she could visit the children. Six months after that, Tina renewed her request for parenting time. The court then granted her two supervised four-hour visits with the children each month. Over the 18 months that followed, Tina used only about a quarter of the visits allotted to her, and when she did visit, she often left before the approved four *638 hours. Tina's absences were explained in part by health issues she suffered during a five-month period beginning in September 2008. After Kenneth and Kelly filed their petition for termination, Tina visited the children more regularly. During the seven or eight months prior to trial, Tina missed only one scheduled visit.
¶ 6 As noted, the dissolution decree ordered Father to provide financial support for the children; there was no evidence Father had not complied with that obligation. Although the dissolution decree did not require Tina to provide any financial support for the children, much was made at trial about the fact that she had failed to offer them significant financial support. When Tina's daughter was quite young, Kenneth and Kelly once asked Tina to contribute to a medical bill for the girl, but Tina refused to do so. Kenneth and Kelly never again asked Tina for monetary support. Tina testified that, although she did not provide money for the children, she regularly brought them snacks, clothing and toys.
¶ 7 The evidence also showed that except for attending a single doctor's appointment, Tina has not been involved in any decision-making regarding the children's medical care. Nor has she expressed interest in or participated in decision-making regarding the children's religion or education. On the other hand, Kenneth and Kelly generally make no effort to initiate communication with Tina regarding decisions about the children.
¶ 8 A clinical psychologist, Dr. Andre Rousseau, testified the children have virtually no bond with Tina and that they should stay in their current home "perhaps for the rest of their child life." He explained that the children's bonding with Tina likely has been hindered by the presence of others at her visits, and opined that supervision no longer may be necessary for those visits. Rousseau further testified that tension between Tina on the one hand and Kenneth and Kelly on the other might have impaired the children's acceptance of Tina. At least some of the tension stems from Tina's repeated unsubstantiated reports to Child Protective Services and police against Kenneth and Kelly.
¶ 9 In a written order issued after trial, the superior court found that since Tina's supervised parenting time began in 2007, "[s]he has been fairly consistent in her visits, with the exception of medical issues." Nevertheless, the court found the children "have almost no bonding with [Tina]." It found Tina "is unable to parent" because she is unable to bond with the children and because "there are some issues of stability, both in her job situation and her current living environment." The court added that it had concerns about Tina's mental and emotional stability.[4]
¶ 10 In the end, the court denied the petition to terminate:
[A] Petition for Termination of Parental Rights will not be granted unless the Court finds that the Petitioners have shown by clear and convincing evidence that there are grounds sufficient to terminate [Tina's] parental rights. Looking at A.R.S. § 8-533, and looking at the definition of abandonment, the Court cannot find that [Tina] has only maintained the minimal contact with the children. The Court cannot find an intentional relinquishment, even though [Tina] has not paid any child support. . . . Based upon the foregoing the Court will not grant the Petition to Terminate [Tina's] parental rights.
The court appointed Kenneth and Kelly as guardians of the two children and ruled that "visitation will be left completely up to the guardians unless a Petition for Visitation is filed with the Court."[5]
¶ 11 Kenneth and Kelly appealed from the superior court's judgment. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and pursuant to A.R.S. § 12-2101(B) (2003).

*639 DISCUSSION

A. Standard of Review.
¶ 12 We review the superior court's order for an abuse of discretion and will affirm if it is supported by sufficient evidence in the record. See Christy C. v. Ariz. Dep't of Econ. Sec., 214 Ariz. 445, 452, ¶ 19, 153 P.3d 1074, 1081 (App.2007). We view the facts in the light most favorable to sustaining the superior court's decision. Jesus M. v. Ariz. Dep't of Econ. Sec., 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App.2002). However, we review de novo any issues of law, including the interpretation of a statute. Kimu P. v. Ariz. Dep't of Econ. Sec., 218 Ariz. 39, 43, ¶ 13, 178 P.3d 511, 515 (App.2008).

B. "Intentional Relinquishment" Is Not the Sole Touchstone of "Abandonment."
¶ 13 The superior court may terminate a parent-child relationship if it finds one of the statutory grounds by clear and convincing evidence. A.R.S. § 8-537(B) (2007); Kent K. v. Bobby M., 210 Ariz. 279, 281-82, ¶ 7, 110 P.3d 1013, 1015-16 (2005). In addition, the court must find by a preponderance of the evidence that termination would be in the child's best interests. Kent K., 210 Ariz. at 288, ¶ 41, 110 P.3d at 1022 (interpreting A.R.S. § 8-533(B)).
¶ 14 Among the statutory grounds is "[t]hat the parent has abandoned the child." A.R.S. § 8-533(B)(1). Abandonment is defined as:
[T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.
A.R.S. § 8-531(1) (2007).
¶ 15 Kenneth and Kelly argue the superior court erred by requiring evidence of intentional relinquishment to prove abandonment under the statute. The common law and statutory tests for abandonment used to turn in large part on the parent's subjective intent. See Michael J. v. Ariz. Dep't of Econ. Sec., 196 Ariz. 246, 249 n. 2, ¶¶ 15, 17, 995 P.2d 682, 685 n. 2 (2000). In 1994, however, the legislature removed the parent's intent from the definition of abandonment, see A.R.S. § 8-531(1), and thereafter, in Michael J., the supreme court made clear that intent is not dispositive in determining abandonment. 196 Ariz. at 249-50, ¶ 18, 995 P.2d at 685-86. As the court put it,
Under [A.R.S. § 8-531(1)] abandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship.
Id. The court went on to declare that "[w]hat constitutes reasonable support, regular contact, and normal supervision varies from case to case." Id. at 250, ¶ 20, 995 P.2d at 686 (quoting In re Pima County Juvenile Severance Action No. S-114487, 179 Ariz. 86, 96, 876 P.2d 1121, 1131 (1994)).
¶ 16 As Michael J. held, abandonment under A.R.S. § 8-533(B)(1) no longer turns on whether a parent has intentionally relinquished a child. 196 Ariz. at 249-50, ¶ 18, 995 P.2d at 685-86. Instead, as that case and the amended statute make clear, abandonment exists when a parent has failed to provide reasonable support and to maintain regular contact and a normal parental relationship with the child.

C. Abandonment Does Not Depend Solely on Whether a Parent Has Maintained "Minimal Contact" with the Child.
¶ 17 In explaining its decision, the superior court in this case noted that since 2007, Tina "has been fairly consistent in her visits, with the exception of medical issues." Apparently based on that finding, the court concluded it could not "find that [Tina] has only maintained the minimal contact with the children." By this language, the court seemingly relied on the provision in A.R.S. § 8-531(1) *640 that "[a]bandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). On appeal, Kenneth and Kelly argue the court should have granted their petition because the evidence showed Tina has provided neither reasonable support for nor normal supervision of the children.
¶ 18 We must read a statute as a whole and give meaningful operation to all of its provisions. Hanson Aggregates Ariz., Inc. v. Rissling Constr. Grp., Inc., 212 Ariz. 92, 94, ¶ 6, 127 P.3d 910, 912 (App.2006). Section 8-531(1) allows a court to conclude that a parent has abandoned a child when the evidence is that the parent "has made only minimal efforts to support and communicate with the child." But we do not construe the statute to mean that a court may terminate a parent's rights based on abandonment only when it can make that finding. Instead, in deciding whether a parent has abandoned a child as defined in § 8-531(1), a court should consider each of the stated factorswhether a parent has provided "reasonable support," "maintain[ed] regular contact with the child" and provided "normal supervision." A.R.S. § 8-531(1).
¶ 19 Consistent with Michael J., the court's determination of reasonable support, regular contact and normal supervision will depend on the circumstances of the particular case. See In re Pima County Juvenile Severance Action No. S-114487, 179 Ariz. at 96, 876 P.2d at 1131. The dissolution decree in this case gave Tina joint legal custody of her children, and the evidence was that Kenneth and Kelly voluntarily allowed Tina to visit with the children at first and that court-ordered visitation was available to her beginning in 2007. Under the circumstances, whether she abandoned the children within the meaning of Arizona law turned on whether, in the context of that unusual parenting situation, she "maintained regular contact" with the children and provided them with "reasonable support" and "normal supervision."
¶ 20 Facts bearing on these issues would include whether Tina visited the children regularly, the nature of her relationship with the children and whether, within that context, she provided parental supervision and guidance as the circumstances allowed. By the same token, because Father provided child support and medical insurance for the children, "child support" in the traditional sense was not at issue. Nevertheless, evidence of any gifts, clothes, cards and food Tina gave to the children would bear on whether she provided "reasonable support" under the circumstances of this case. Whether Tina voluntarily contributed additional funds to Kenneth and Kelly to support the children's upbringing also would bear on that question, along with evidence of whether Kenneth and Kelly accepted such support or asked her for funds, and her response to any such requests.
¶ 21 We note that, in assessing the evidence, including in a case presenting circumstances as unusual as these, the court also should look to see whether the parent has taken steps to establish and strengthen the emotional bonds linking him or her with the child. See In re Pima County Juvenile Severance Action No. S-114487, 179 Ariz. at 99, 876 P.2d at 1134 (affirming termination "because [the parent] failed to promptly and persistently grasp the opportunity to develop a relationship with his child or assert his legal rights"); see also Michael J., 196 Ariz. at 251, ¶ 25, 995 P.2d at 687 ("The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity.").

D. Application of These Legal Principles.
¶ 22 The factual determinations required by these legal principles are for the superior court to make. Michael J., 196 Ariz. at 250, ¶ 20, 995 P.2d at 686. We typically assume the superior court knows and correctly applies the law. State v. Trostle, 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997). It appears from the order entered in this case, however, that the court incorrectly applied the law by denying the termination petition based on its finding that Tina had not "intentional[ly] relinquish[ed] the children" and that it could not "find that [Tina] *641 has only maintained the minimal contact with the children." Accordingly, we vacate the portion of the judgment denying the petition to terminate Tina's parental rights and remand the matter for such further or supplemental proceedings as the superior court judge who heard the matter may deem appropriate.[6]

CONCLUSION
¶ 23 For the reasons set forth above, the judgment is vacated insofar as it denied the petition to terminate Tina's parental rights. We remand for further proceedings consistent with this decision.
CONCURRING: MICHAEL J. BROWN, and JOHN C. GEMMILL, Judges.
NOTES
[1] We view the facts and draw all reasonable inferences in the light most favorable to upholding the court's order. Jesus M. v. Ariz. Dep't of Econ. Sec., 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App.2002).
[2] The petition also sought to terminate Father's parental rights. The case was bifurcated, and at Tina's trial, Father testified he would relinquish his parental rights so that Kenneth and Kelly could adopt the children. Our record does not contain a ruling on the motion to sever Father's rights.
[3] Kenneth and Kelly also asserted Tina was unable to discharge her parental responsibilities because of mental illness or mental deficiency and there were reasonable grounds to believe that the condition would continue for a prolonged, indeterminate period, pursuant to A.R.S. § 8-533(B)(3). On appeal, Kenneth and Kelly do not argue the superior court erred by failing to grant their petition on that ground.
[4] By contrast, the court found that Kenneth and Kelly "are exceptional caregivers for the children and have been so, for the past six years."
[5] Although the court's order did not address the matter, Tina did not dispute Kenneth and Kelly's allegation that the Indian Child Welfare Act, 25 U.S.C. §§ 1901-1963 (2006), does not apply to the children.
[6] Tina did not appeal from the court's order imposing a guardianship.