NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KARLA M.,
*Appellant*,

*v.*

LARRY J., BEATRICE J., E.M., K.M.,
*Appellees*.

No. 1 CA-JV 18-0421
FILED 4-4-2019

Appeal from the Superior Court in Maricopa County
No. JS19358
The Honorable Glenn A. Allen, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Law Office of Sarah J. Michael, Glendale
By Sarah J. Michael
*Counsel for Appellees Larry J. and Beatrice J.*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

¶1            Karla M. ("Mother") appeals the superior court's order severing her parental rights to her twin daughters, born in 2010.[1]  Because sufficient evidence supports the order, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            In June 2014, Missouri's analog to the Arizona Department of Child Safety petitioned a Missouri court to make the girls "ward[s] of the court."  In May 2015, the girls moved to Arizona to live with their maternal grandmother and her husband (collectively, "Grandparents"), who took custody of them through a guardianship approved by the Missouri court. Mother continued to live in Missouri and did not visit the girls after the guardianship began in 2015.  During that period, Mother twice was incarcerated, including a period from February to August 2017.

¶3            In December 2017, Mother filed a motion in Missouri to end Grandparents' guardianship.  The following month, Grandparents petitioned the Arizona superior court to terminate Mother's parental rights so they could adopt the girls.  The Missouri court stayed ruling on the motion to terminate the guardianship pending the ruling on the termination petition in Arizona.

¶4            In their petition, Grandparents alleged, *inter alia*, that Mother had abandoned the girls under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1) (2019).[2]  After Grandparents filed their petition, Mother asked the court to allow her visitation with the girls, asserting Grandparents were denying her contact with them.  Grandparents objected to Mother's request,

---

[1]     The court's order also severed the rights of the girls' father, but his rights are not at issue in this appeal.

[2]     Absent material revision after the relevant date, we cite the current version of a statute or rule.

2

explaining the girls had recently begun therapy "to address the issues caused by the abandonment," and the court denied Mother's motion. The court held a severance hearing in August 2018, at which Mother and Grandparents testified. Later, the court ruled Mother had abandoned the two girls and terminated her parental rights.

¶5　　　　Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A) (2019), 12-120.21(A)(1) (2019), -2101(A)(1) (2019) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶6　　　　The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). A party seeking termination of a parent-child relationship must prove the existence of a statutory ground under § 8-533(B) by clear and convincing evidence, *Michael J.*, 196 Ariz. at 249, ¶ 12, and, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). The superior court is the trier of fact in a termination proceeding. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We view the evidence and reasonable inferences drawn from the evidence in the light most favorable to sustaining the court's decision and will reverse only if no reasonable evidence supports the court's factual findings. *Id.*

¶7　　　　Under Arizona law, "abandonment" means:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1) (2019).

¶8　　　　In deciding whether a parent has abandoned a child under § 8-531(1), the superior court "should consider each of the stated factors – whether a parent has provided 'reasonable support,' 'maintain[ed] regular contact with the child' and provided 'normal supervision.'" *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010). "[A]bandonment is measured not

by a parent's subjective intent, but by the parent's conduct." *Michael J.*, 196 Ariz. at 249, ¶ 18. When "circumstances prevent the . . . [parent] from exercising traditional methods of bonding with [the] child, [the parent] must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250, ¶ 22.

¶9        Reasonable evidence supports the superior court's finding that Mother abandoned the girls. Mother had sent only $30 to support the girls and did not begin paying child-support arrears until March 2018, a few months before the termination hearing. Moreover, at the time of the hearing, Mother had not seen the girls since they moved to Arizona to stay with Grandparents, more than three years before. Mother testified she tried to visit the children three times, but Grandparents did not allow her to visit. On the other hand, Grandparents testified Mother had asked to visit the girls only twice during that time, once in December 2017 and once in June 2018. Grandparents testified they would have allowed Mother to visit the girls in December 2017, but Mother chose not to visit after Grandparents told her she could not stay at their home. In June 2018, the girls' counselor advised against Mother visiting; Grandmother testified that they followed the counselor's recommendation, but Grandfather testified that he nonetheless "offered to . . . make arrangements" for a visit "and [Mother] didn't follow through."

¶10        Mother points to her motion for visitation, phone calls to the girls, and gifts and letters she sent them as evidence she did not abandon her daughters. The record does not make clear how frequently Mother telephoned the girls before she was incarcerated in February 2017, but she did not call them more than once a month. After Mother was released from jail in August 2017, she telephoned the girls roughly once a week. It likewise is unclear how frequently Mother corresponded with the girls. She testified she had sent them "several" letters, but in support of that contention she offered copies of a single card she sent to the girls and two letters she wrote to Grandparents. Although the letters asked Grandparents to tell the girls that Mother loved them, the letters do not show an ongoing dialogue between Mother and the girls or between Mother and Grandparents about parenting issues. Mother argues she sent the girls gifts and offered photographs of various items she had sent for their birthdays and other holidays, but there is no evidence of when, how many or how frequently she sent them gifts. Based on the record, we cannot say the superior court erred in finding Mother abandoned the girls. We will not reweigh the evidence on which the court ruled. *Jordan C.*, 223 Ariz. at 93, ¶ 18.

¶11 Mother nevertheless argues that because Grandparents "stymied her efforts for visitation and contact," an abandonment finding was foreclosed under *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013). In particular, Mother points to her testimony that Grandparents did not allow her to visit her girls. Mother also testified that when she telephoned to speak to the girls, Grandmother would use a "hateful" tone of voice to let the girls know she was on the phone, "like it was a bad thing to speak to [Mother]."

¶12 For their part, Grandparents testified they attempted to work with Mother to facilitate visits between her and the girls, and stated they did not stop her from speaking to them on the phone. The superior court is in the best position to assess the credibility of witnesses and was entitled to believe the Grandparents' testimony. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). Moreover, the facts here are unlike those in *Calvin B.*, in which the mother violated a parenting-time order and obtained multiple orders of protection to bar the father from parenting their child. 232 Ariz. at 297-98, ¶¶ 22-29. Here, the record supports a finding that Grandparents took no such action to prevent Mother from maintaining a relationship with the girls.

¶13 Mother also argues the superior court erred in finding that termination of her parental rights was in the girls' best interests. Termination of the parent-child relationship is in the best interests of a child if there is either "an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship." *Jesus M.*, 203 Ariz. at 282, ¶ 14. Moreover, "[i]n combination, the existence of a statutory ground for severance and the immediate availability of a suitable adoptive placement for [a child] frequently are sufficient to support a severance order." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 335, ¶ 8 (App. 2004).

¶14 The superior court's ruling that termination of Mother's parental rights is in the girls' best interests is supported by reasonable evidence. Grandparents love and intend to adopt the girls. Grandparents testified the girls are thriving socially and academically, feel secure with Grandparents and feel that "this is their home." Mother does not dispute that Grandparents are a suitable adoptive placement. In fact, she testified the girls need stability and that Grandparents have provided the most stable placement for them, Grandparents have taken good care of the girls, and the girls have bonded with Grandparents.

## CONCLUSION

¶15      For the reasons stated above, we affirm the superior court's order terminating Mother's parental rights to the girls.



AMY M. WOOD • Clerk of the Court
FILED:  AA