NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO Z.F.

No. 1 CA-JV 24-0094

FILED 10-17-2024

Appeal from the Superior Court in Maricopa County
No. JS21921
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Law Office of Paula Lorona, Peoria
By Paula Lorona
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Acting Presiding Judge Kent E. Cattani and Judge Paul J. McMurdie joined.

---

**G A S S**, Chief Judge:

¶1　　　　　Father appeals the superior court's order terminating his parental rights to the child (born in 2008) in this private termination case. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2　　　　　The child lived with mother from birth until mother's death in early 2019. The superior court established father's paternity in 2009, requiring him to pay $253 in child support to mother. Father lived with mother and the child for a short time. Father stopped living with mother and the child in 2010 while father was incarcerated for 10 months. After his release in 2011, father saw the child regularly until 2014, when father moved to Michigan. Father remained in Michigan, off and on, until 2018. While in Michigan, father had regular phone and video contact with the child, but he did not see the child in person.

¶3　　　　　In 2018, father returned to Arizona. Since then, father saw the child just twice—both times in 2018. Father says mother refused him further contact because of father's girlfriend. Father also ended all contact with mother after that. He did not even know mother had died until he saw it online. Father has never paid on the child support and since 2018 sent no gifts or cards.

¶4　　　　　For a time after mother died, the child lived with mother's family members. Since 2021, the child has lived with petitioner and petitioner's other children. Though they are unrelated by blood or marriage, petitioner has an *in loco parentis* relationship with the child. During that time, father asked several of mother's family members about the child, but they would not tell him where the child was. Though the superior court established father's paternity in 2009, father says he was unaware of that case, was not familiar with the legal system, and did not know how to pursue his rights. Father took no legal action until opposing the termination.

**¶5**        After testimony from petitioner and father, the superior court found by clear and convincing evidence petitioner proved father abandoned the child and, by a preponderance of the evidence, termination of father's rights was in the child's best interests. This court has jurisdiction over father's timely appeal under article VI, section 9, of the Arizona Constitution, A.R.S. §§ 8-235.A and 12-2101.A.1, and Rule 603(a), Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

**¶6**        In a private termination, a petitioner must prove by clear and convincing evidence at least one statutory ground for termination. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149 ¶ 8 (2018); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 42 (2005) (applying standard to a private termination action). A petitioner also must prove by a preponderance of the evidence termination is in the child's best interests. *See Alma S.*, 245 Ariz. at 150 ¶ 8.

**¶7**        The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted). This court, thus, reverses a superior court termination order only if it is clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 481 ¶ 46 (2023). To reverse, this court must conclude "as a matter of law that no one could reasonably find the evidence" supports the order. *Id.* (addressing termination ground) (citation omitted); *Alma S.*, 245 Ariz. at 151 ¶ 18 (addressing child's best interests).

**¶8**        Arizona defines abandonment as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. *Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.* Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531.1 (emphasis added).

**¶9**        Courts measure abandonment "not by a parent's subjective intent, but by the parent's conduct." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 36 ¶ 15–16 (App. 2010) (quoting *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000)). "The burden to act as a parent rests with the parent,

who should assert [the parent's] legal rights at the first and every opportunity." *Michael J.*, 196 Ariz. at 251 ¶ 25. At issue is "whether the parent has taken steps to establish and strengthen the emotional bonds linking [the parent] with the child." *Kenneth B.*, 226 Ariz. at 37 ¶ 21. Evidence supports abandonment if the parent made "only minimal efforts to support and communicate with the child." *Id.* at ¶ 18 (analyzing whether failure to support and communicate with the child alone can support termination for abandonment).

**¶10**      Father argues the superior court erred by finding abandonment. He says he was absent from the child's life because the child's mother and others allegedly interfered with his access. Father relies on two cases: *Calvin B. v. Brittany B.*, 232 Ariz. 292, 297 ¶ 21 (App. 2013); *In re C.R.*, 256 Ariz. 170, 174 ¶ 15 (App. 2023). But in *Calvin B.*, strong evidence showed the mother actively prevented the father from contacting the child, even obtaining orders of protection barring communication. 232 Ariz. at 297 ¶¶ 22–24. That is not true here. Father's reliance on *C.R.* is similarly unavailing. Like the father in *C.R.*, father here did not "act persistently to foster and maintain the parent-child relationship despite obstacles that may arise." *See* 256 Ariz. at 175 ¶ 20 (cleaned up).

**¶11**      Father argues he was involved in the child's life at least intermittently from 2009 through 2018. Even if true, father has had no contact with the child since mother died in early 2019—a period of far more than six months. He has provided no support for the child during this period. And father's efforts to establish contact since 2019 were occasional contacts with the child's other family members. He has never used the courts to locate or contact the child or to foster and maintain the parent-child relationship.

**¶12**      At bottom, father absented himself from the child's life for significant periods. Father's minimal actions, thus, support the superior court's finding of abandonment. *See Jordan C.*, 223 Ariz. at 93 ¶ 18.

**¶13**      Once the superior court finds clear and convincing evidence establishes a statutory ground for termination, it "can presume that the interests of the parent and child diverge." *Kent K.*, 210 Ariz. at 286 ¶ 35. As a result, at the best-interests stage, the "'child's interest in stability and security' must be the court's primary concern." *Alma S.*, 245 Ariz. at 150 ¶ 12 (citation omitted). Termination is in the child's best interests if the child would be harmed by continuing the parent-child relationship or would benefit from severance. *Id.* at ¶ 13. "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally

possible and likely, [the superior] court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 12 (2016).

**¶14**      The petitioner testified she is meeting the child's physical and emotional needs. The child is doing well and has established sibling-like bonds with petitioner's other children. Petitioner is prepared to adopt the child. The child consented to being adopted by petitioner, knowing father's legal rights would be terminated as a result. If the child ever desires to have contact with father, petitioner is willing to facilitate it. On this record, we find no abuse of discretion in the superior court's best-interests finding. *See id.*; *Jordan C.*, 223 Ariz. at 93 ¶ 18.

## CONCLUSION

**¶15**      We affirm the termination of father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV