NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO R.E. and M.E.

No. 1 CA-JV 24-0148

FILED 04-01-2025

Appeal from the Superior Court in Maricopa County
No. JS21962
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Saul E.*

Barreda Law, PLLC, Gilbert
By Bonnie Platter
*Counsel for Appellee Meagan O.*

<hr>

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

<hr>

**M O R S E**, Judge:

¶1          Saul E. ("Father") appeals the juvenile court's order terminating his parental rights to R.E. and M.E. ("the Children").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Father and Meagan O. ("Mother") began their relationship in 2008, never married, and separated by early 2017.  Father and Mother are the Children's biological parents.  Mother gave birth to R.E. in 2011 and M.E. in 2015.

¶3          Initially, neither party petitioned to establish parenting time or child support, and they shared equal parenting time for approximately six months.  The parties later agreed that Father would have parenting time every weekend.  Father and Mother continued this arrangement until September 2020.

¶4          Father lived with a girlfriend and had three more children through that relationship.  In September 2020, Father's girlfriend informed Mother that M.E. had touched one of her half-sisters inappropriately during a weekend visit at Father's home.  After the incident, Father ceased all contact with the Children. Between September 2020 and March 2024, Father had neither parenting time nor any contact with the Children.  Father also did not call, text, or email Mother about the Children and provided no child support.

¶5          Father's first attempt to reestablish a relationship with the Children occurred in February 2023 when Father petitioned to establish paternity, legal decision-making, and child support.  Mother petitioned to terminate Father's parental rights in December 2023, alleging abandonment under A.R.S. § 8-533(B)(1).

¶6          In March 2024, the parties participated in mediation and agreed that Father would have one hour of supervised visitation with the

Children every other weekend.  The visitation schedule continued until the termination adjudication hearing at the end of June 2024.  After the three-day hearing, the juvenile court found clear and convincing evidence that Father had abandoned the Children because he failed to maintain a parent-child relationship with them "from September 13, 2020 through the filing of the Petition for Termination [in December 2023]."  The juvenile court found, by a preponderance of the evidence, that terminating Father's parental rights was in the Children's best interests because Mother's new husband ("Stepfather") wanted to adopt the Children, which would provide stability to their lives.

¶7        Father timely appealed and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶8        Father contends the juvenile court erred by terminating his parental rights because he did not abandon the Children and termination was not in the Children's best interests.

¶9         The juvenile court may terminate a parent's rights if it finds (1) a statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence and (2) termination is in the child's best interests by a preponderance of the evidence.  *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 477, ¶ 20 (2023).  We review the juvenile court's termination order for an abuse of discretion, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and will accept the court's findings of fact "if reasonable evidence and inferences support them," *Brionna J.*, 255 Ariz. at 478, ¶ 30 (quoting *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580, ¶ 10 (2021)).  We will affirm the "juvenile court's legal conclusions regarding the statutory ground for termination . . . unless they are clearly erroneous." *Id.* at 478–79, ¶ 31.

## I.    Abandonment.

¶10        Father argues he did not abandon the Children because he petitioned the juvenile court to establish visitation and had visitation with the Children from March 2024 until the termination adjudication hearing. We disagree.

¶11        Under A.R.S. § 8-531(1), "abandonment" is:

the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing

3

normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

In making its abandonment determination, the juvenile court should consider "whether a parent has provided reasonable support, maintained regular contact with the child, and provided normal supervision." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010) (cleaned up). Abandonment is measured by the parent's conduct, not their subjective intent. *Michael J. v. Ariz. Dep't. of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 18 (2000).

**¶12** The juvenile court heard from both parents at the termination adjudication hearing. Between September 2020 and Father's February 2023 petition to establish paternity, Father did not call the Children, text or email Mother about the Children, or provide child-support payments. Father did not have any contact with the Children from September 2020 until March 2024.

**¶13** Father contends that his February 2023 petition to establish paternity precluded the juvenile court from terminating his parental rights on the ground of abandonment. But as of February 2023, Father had already failed to maintain a normal parental relationship with the Children for 29 months. *See* A.R.S. § 8-531(1) (failure to maintain a normal parent-child relationship without just cause for six months is prima facie evidence of abandonment). And Father provides no "just cause" to explain his failure to maintain a relationship with the Children.

**¶14** Father claims that he could not petition the juvenile court until February 2023 because he did not have Mother's address and could not locate her or the Children. Mother acknowledged she and the Children moved in October 2020 but explained that they moved in with Mother's parents and that Father was aware of the move. The juvenile court also heard evidence that Father had Mother's phone number and email, and contact information for Mother's family members and friends, but failed to contact anyone to locate the Children. Reasonable evidence supports the juvenile court's finding that Father did not establish just cause for his failure to maintain any relationship with the Children for at least 29 months. We do not reweigh the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). On this record, the juvenile court did not abuse its discretion in finding that Father had abandoned the Children. *See Toni W.*

*v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 67, ¶¶ 17–20 (App. 1999) (affirming abandonment finding when mother made no effort to see or locate her child for 22 months).

## II. Best-Interests.

**¶15** Father next argues that termination was not in the Children's best interests because he made efforts to see the Children after Mother petitioned for termination and the Children wanted to maintain a relationship with him.

**¶16** Termination is in a child's best interests if the child will (1) benefit from termination or (2) be harmed absent termination. *Alma S.*, 245 Ariz. at 150, ¶ 13. When performing the best-interests analysis, courts "presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Id.* at ¶ 12 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005)). The court must balance the parent's diluted interest in maintaining his parental rights against the child's interest in stability and security. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016).

**¶17** The juvenile court found termination was in the Children's best interests because terminating Father's rights would allow Stepfather to adopt the Children and "provide stability and permanency in their lives." It is well settled that a child's prospective adoption can "warrant[] a best-interests finding primarily on that basis." *Id.* at 5, ¶ 16; *Alma S.*, 245 Ariz. at 151, ¶ 14.

**¶18** The juvenile court heard evidence that the Children have lived happily with Stepfather and Mother since at least May 2020. Stepfather is involved in the Children's daily lives and is the father figure the Children turn to for guidance and support. The Children call Stepfather "Dad" and Mother testified to the close and loving bond Stepfather shares with the Children. Stepfather advised the court that he "wholeheartedly" intended to adopt the Children if termination were granted, and the Children have repeatedly expressed their desire for Stepfather to adopt them. A home-study report also recommended that the court terminate Father's parental rights "in order to pursue step-parent adoption." The record provides ample support for the juvenile court's best-interests finding.

## CONCLUSION

¶19        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR