NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL F., *Appellant*,

*v.*

ASHLEY B., O.F., *Appellees*.

No. 1 CA-JV 18-0472
FILED 6-27-2019

Appeal from the Superior Court in Maricopa County
No. JS518664
The Honorable Veronica W. Brame, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Stuart & Blackwell, PLLC, Chandler
By Cory A. Stuart
*Counsel for Appellee Ashley B.*

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kent E. Cattani joined.

**J O H N S E N**, Judge:

¶1          Michael F. ("Father") appeals the superior court's order terminating his parental rights to his daughter on grounds of abandonment and chronic substance abuse. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (3) (2019).[1]  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          The child was born in June 2009.[2]  Her mother ("Mother") and Father separated a few months later, and the child remained with Mother, without any formal visitation arrangement for Father.  In 2011, Father sought parenting time, and the family-court division of the superior court granted him eight days of parenting time a month.  According to the record in that action, Father had been convicted of driving under the influence three times through 2006, and "Father's issues related to alcohol testing and sobriety" limited the amount of his allowed parenting time.

¶3          After Mother filed a petition to modify parenting time in January 2014, the family court ordered Father to submit to weekly alcohol testing through TASC.  In September 2015 the court issued an order limiting Father's parenting time based on its finding after an evidentiary hearing that he had "not satisfactorily demonstrated a period of continued sobriety, despite Court orders and interventions aimed at aiding in that goal."  The court ordered that Father could have only four hours a week of supervised parenting time (using one of three designated providers) until he (1) completed "an intensive alcohol abuse program" and (2) completed "random TASC testing eight to ten times per month for alcohol for 120 days <u>from the filing of this minute entry</u> with no missed, positive or diluted

---

[1]          Absent material revision after the relevant date, we cite the current version of a statute or rule.

[2]          We view the facts and reasonable inferences therefrom in the light most favorable to affirming the superior court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

tests." The court also required Father to continue using an interlock device pending further order of the court. The court allowed each parent one FaceTime call a day with the child, and ordered the parents not to use disrespectful, demeaning or pejorative language about the other in front of the child.

¶4 In July 2016, the family court heard evidence and issued an order clarifying the parenting-time order. The court ruled that Father could have four hours of supervised parenting time a week; that his visits would have to be supervised by one of three designated providers, at his sole expense; and that supervision would continue until Father (1) completed "an intensive alcohol abuse program," including any recommended psychological/psychiatric examination and treatment; and (2) completed random TASC testing eight to ten times a month for a period of 120 consecutive days "with no missed, diluted, or positive test results" (and that the 120-day period would begin anew with any missed, diluted or positive test). The court clarified that Father could not have unsupervised parenting time until he successfully completed the 120-day regime, but also ruled that in addition to that requirement, Father must test randomly eight to ten times per month for alcohol through TASC for at least nine consecutive months, and that if during that time he had a missed, diluted or positive test, his parenting time "shall revert back to" supervised parenting time until he completed another 120-day testing regime.

¶5 For a period up to that point, rather than engage in supervised visitation, for which he would have had to pay a fee, Father had been taking advantage of opportunities to visit the child at her school. According to a school document, he had visited some 50 times in 2016. In its July 2016 order, however, the family court ruled that Father could no longer exercise his parenting time at the child's school; Father was not barred from the child's school, but could not have contact with the child there without "an appropriate supervisor."

¶6 In November 2017, Mother filed a petition to terminate Father's parental rights on grounds of abandonment and chronic substance abuse under § 8-533(B)(1), (3). The court heard evidence over two days in September 2018 and later entered an order granting the petition on both grounds.

¶7 Father filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. § 8-235(A) (2019) and Arizona Rule of Procedure for the Juvenile Court 103(A).

**DISCUSSION**

## A.    General Principles.

**¶8**        We review an order terminating a parent's relationship with his or her child for an abuse of discretion and will affirm if it is supported by sufficient evidence. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 36, ¶ 12 (App. 2010). We view the evidence in the light most favorable to sustaining the superior court's ruling. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

**¶9**        The superior court may terminate a parent-child relationship if it finds one of the statutory unfitness grounds by clear and convincing evidence. A.R.S. § 8-537(B) (2019); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, ¶ 7 (2005). The court also must find by a preponderance of the evidence that termination would be in the child's best interests. *Kent K.*, 210 Ariz. at 288, ¶ 41 (interpreting § 8-533(B)).

**¶10**        One statutory ground for termination is abandonment, which the law defines as

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1) (2019). "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct . . . ." *Michael J.*, 196 Ariz. at 249, ¶ 18. When "circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250, ¶ 22 (quotation omitted).

**¶11**        As the trier of fact in a termination proceeding, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). Resolving conflicts in the evidence is uniquely the province of the superior court, and we will not reweigh the evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203

Ariz. 278, 282, ¶ 12 (App. 2002). Instead, we review the superior court's order to determine if reasonable evidence supports its factual findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**B.     Mother Presented Sufficient Evidence of Abandonment.**

**¶12**     Undisputed evidence showed that Father had chosen not to participate in supervised visitation, and the court found Father had not complied with family-court orders that would have allowed him to enjoy unsupervised parenting time. Based on the record, the court concluded that "Father has voluntarily, knowingly and intelligently chosen to be Non-Compliant resulting in no visits with his child."

**¶13**     The evidence before the court supported its finding. According to the record, by the time of the termination hearing in September 2018, over the 27 months since May 2016, Father had seen the child only once, during a supervised visit in December 2017. Although the family court had ruled that Father could exercise his supervised parenting time only through designated providers, Mother testified Father told her that after the December 2017 occasion, he would never again visit the child in one of the designated facilities. She stated Father objected to the family-court order that he would need to bear the cost of supervision at such a location.

**¶14**     The family court also had ruled that Father would not be allowed unsupervised visits until he completed a detailed alcohol-testing regime. But Mother testified before the superior court in this proceeding that Father had sent her a text message in April 2016 declaring that he was "done testing." The text, which the court admitted in evidence, stated, "I will never test ever again in the state of Arizona[.] Forever! No tests ever!" Indeed, Mother testified the last time Father took an alcohol test was in 2015.

**¶15**     The superior court also heard evidence that Father failed to comply with the family court's order prohibiting him from making disparaging comments about Mother to the child during his FaceTime calls with the child. After the family court barred Father from visiting the child at school in July 2016, Father frequently called the child using FaceTime. In the termination hearing, however, Mother testified Father repeatedly made inappropriate comments during his FaceTime calls with the child, and she offered copies of texts and emails to support that contention. For example, Mother testified, "Almost every FaceTime call . . . he would tell [the child] . . . it's your mother's fault that I can't see you or if it was a holiday[,] . . . I

have presents here for you, but you can't have them until your mother allows you to come back to my house." She said she repeatedly warned Father that his comments to the child were inappropriate, but he insisted that he was only telling the child the truth. Finally, based on the family court's order barring disparaging comments, Mother decided in December 2017 to no longer allow the child to accept Father's calls. Father objected and filed a petition in the family-court division to enforce his FaceTime rights. The family-court division did not rule on Father's petition to enforce; instead, it granted Mother's motion to stay ruling on Father's petition pending the ruling on her motion to sever Father's parental rights.

¶16        Mother also offered testimony from Polly Thomas, the director of OLOS Adoption and Child Welfare Agency, who prepared a social study as required by A.R.S. § 8-536 (2019). Thomas, a licensed clinical social worker, testified that she completed a home study of Mother's family and concluded that the child was in a "safe, caring home environment with a mother who loves her and a stepfather who has been in a role as her father for many years." Based on a two-hour interview with Father, Thomas observed that "[h]e basically doesn't take responsibility for not following the court orders that have been in place in family court to maintain a relationship with his biological daughter." Thomas testified Father told her that he was "clean and sober" and would never test with TASC again. Although Father told her that he no longer drank alcohol, Thomas testified that during her interview with Father at his home, she observed a half empty wine bottle on his counter. Thomas testified severance of Father's parental rights would be in the child's best interests because Father had abandoned the child and failed to acknowledge that "the significance of his alcohol-related problems is a barrier to his reunification."

¶17        Father was present at the termination hearing but did not testify. Instead, he presented testimony of three witnesses: A friend, his father, and Dr. Daniel Gaughan, a licensed psychologist.

¶18        Father's friend testified she had seen Father with his daughter "many times" in 2015 and 2016, including at his home. On cross-examination, however, challenged with the fact that Father was allowed only supervised visitation during that timeframe, the friend testified that she last saw the child in 2014.

¶19        The child's paternal grandfather testified Father bought the child a cellphone so that he could communicate with her. He also testified that Father did not appear to have a current alcohol problem and denied ever seeing him drunk. He described Father as "a very child-oriented

person" who was an extremely good father to the child – citing as examples that Father read to the child and her classmates at story-hour at school, taught her the alphabet and took her to the library. Although the grandfather testified that Mother had violated an order by the family court granting grandparent visitation with the child, on cross-examination, he conceded that the court had granted him summer visits with the child and that the child had visited him and his wife "this past summer."

¶20 Gaughan prepared a report that Father offered in evidence. At the hearing, Gaughan testified his opinion was that the court should not sever Father's parental rights. As he stated in his report: "Despite Father's shortcomings, I did not find sufficient deficiencies in Father to indicate that he does not have enough redeeming qualities for [the child] to benefit from this relationship." In his report, however, Gaughan also observed that "Father recognizes that he has put himself in jeopardy of severance due to his own failure to follow Court directives closely enough." Although Father asserted he has been "sober since he stopped testing," Gaughan concluded, "[b]ecause he has not done recent testing, however, he has no way of proving that he has remained sober." Further, Gaughan reported that Father had told him he was $3,000 "in arrears in child support but continues to make payments and wishes to continue to support his daughter financially." Gaughan concluded Father "is the type of person who does not like to be told what to do and does not like having restrictions placed upon him," which in part explained why he had failed to comply fully with the court-ordered testing regime.

¶21 Father argues insufficient evidence supports the superior court's order. To the contrary, the evidence recited above fully supports the court's finding that Father had failed "to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-533(1). Orders of the family-court division allowed Father to have supervised parenting time with his daughter, but he chose to exercise that privilege only once between May 2016 and the September 2018 hearing. Father suggests that he did not want to visit his child at the supervision location because the toys there were dirty. But Father could have chosen to use another facility, or he could have chosen to comply with the testing regime that would have enabled him to enjoy unsupervised visitation. So far as the record reveals, he did neither.

¶22 Citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), Father further contends Mother hindered his efforts to communicate with the child by terminating his FaceTime calls in December 2017. Father argues that although Mother testified she ended the calls because he was using them to

disparage her to their daughter, Mother admitted that "she made numerous derogatory comments about the Father directly to the child." The only evidence of such statements that Father cites in support of that contention, however, is Mother's admission that she had "done something to make [the child] believe" that Mother did not like Father, and that the child also understood that her stepfather did not like Father.

¶23 As Father contends, "[a] parent may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment." *Calvin B.*, 232 Ariz. at 297, ¶ 21. Here, however, the evidence before the court did not show that Mother had impermissibly restricted Father's telephone access to the child. The family-court division had ordered that FaceTime "may be terminated if [] either parent" talked about the pending case in front of the child or used "disrespectful, demeaning, or pejorative language about the other parent (directly or indirectly)" in front of the child. Mother offered evidence sufficient to prove she acted within her rights in terminating the FaceTime calls under that order. In addition to the testimony recounted above, Mother offered an email from Father in which he conceded he had told the child that "mommy is doing everything she can do to limit time I spend with her." She also offered texts in which she or her husband admonished Father to stop disparaging them to the child.

¶24 Father contends he acted diligently to maintain communications with his daughter, citing a petition he filed in the family-court division to enforce his right to make FaceTime calls. As noted, the family-court division did not rule on Father's petition, but granted Mother's motion to stay further proceedings pending a decision in this severance matter. That being said, the record before the superior court in this matter contained sufficient evidence to support the court's conclusion that because Mother acted within her rights in terminating the calls, she did not thereby impermissibly interfere with Father's FaceTime visits with the child. Father's argument to the contrary merely asks us to reweigh the evidence, which is not the role of an appellate court. *Jordan C.*, 223 Ariz. at 93, ¶ 18.

## C. Best Interests.

¶25 Father also challenges the superior court's finding that severance is in the child's best interests. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 1 (2016). Father argues the child has said she loves him and wants to spend time with him, and he points to Mother's concession at trial that he and the child had a loving relationship. Father also cites Gaughan's

opinion against severance and contends that Mother will not allow his family members to remain involved in the child's life after severance.

¶26      Notwithstanding Father's argument, reasonable evidence supports the superior court's finding that severance is in the best interests of the child. The court found that Father was "abusive and manipulative" during his FaceTime calls with the child, refused to take part in supervised visits with her and failed to comply with the testing regime required before he could enjoy unsupervised visits. At the same time, as the court found, the child will benefit from termination because she has a "loving and nurturing home environment" with Mother and her husband. The stepfather testified he loves the child as his own and wants to adopt her, and the court found adoption would provide the child "with the added benefit of stability and permanency."

¶27      The court did not abuse its discretion by ruling based on this evidence that severance was in the child's best interests. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018) (best-interests inquiry requires

consideration of totality of circumstances); *Demetrius L.*, 239 Ariz. at 4, ¶ 13 (adoption may support best-interests determination in private severance).

## CONCLUSION

**¶28** For the reasons stated above, the juvenile court's order terminating Father's parental rights to the child is affirmed.[3]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] Because reasonable evidence supports the court's decision to terminate Father's parental rights due to abandonment, we need not address Father's arguments concerning the substance-abuse ground on which the court also ruled. *Jesus M.*, 203 Ariz. at 280, ¶ 3.