NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JESSE R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.R., M.R., *Appellees*.

No. 1 CA-JV 22-0131
FILED 10-25-2022

Appeal from the Superior Court in Maricopa County
No.  JD533997
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

**¶1** Jesse R. ("Father") appeals the juvenile court's order terminating his parental rights to his two daughters. Mother is not a party to this appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Father and Mother have two daughters, one born in 2016 and one in 2017; the parents did not ever marry. The daughters were living in various hotels with Mother when DCS received reports that Mother physically abused her youngest daughter and refused medical treatment for her oldest, who was diagnosed with gonorrhea of the eye.

**¶3** When a DCS caseworker asked Mother about Father's whereabouts, Mother reported he was not involved in the daughters' lives, and she did not have his current address or phone number. According to Mother, Father was possibly residing out of state, "does not contact them," and had a history of domestic violence with Mother, which the daughters witnessed.

**¶4** In March 2021, DCS took temporary custody of the daughters and filed a dependency petition, alleging abuse and neglect by Mother and Father. A parent-locate specialist was unable to find Father after the daughters were placed in foster care, but DCS continued efforts to reach him via weekly publication of the proceedings in a Maricopa County newspaper throughout April, May, and June.

**¶5** In July, Father called DCS from his Oregon residence and told a caseworker that "he was not in a position to parent," but that he wanted "to have communication with the girls." The caseworker reported that Father refused to provide his address and was unwilling to perform "essential parental responsibilities."

**¶6** Father first appeared in this case at the July 2021 continued initial dependency hearing. Father denied DCS's allegations and requested

2

a trial, which the court allowed. But Father failed to appear at the pretrial conference the following month and the daughters were adjudicated dependent in his absence. The court approved a case plan of family reunification.

**¶7**        Father also failed to appear at the November report and review hearing. At the hearing, DCS reported it was not able to properly assess Father for services due to lack of contact and voiced concerns about Father's substance abuse and domestic violence. The court changed the daughters' case plan to termination and adoption.

**¶8**        DCS moved to terminate Father's parental rights, alleging he abandoned the daughters. Father appeared at the December initial termination hearing, denied DCS's allegations, and requested a trial, which the court set for February 2022. The court ordered DCS to "conduct a staffing to address the appropriate means of communication between Father and the children no later than [December 10, 2021]."

**¶9**        On December 16, Father filed an Adoption and Safe Families Act ("ASFA") objection, arguing DCS failed to make reasonable efforts to provide parent-child communication and accommodate Father's visitation requests. DCS responded that it could not locate Father "for a significant amount of time." And because it had difficulty "creating and maintaining contact with Father," DCS argued it could not refer Father for visitation services before consulting its unit psychologist.

**¶10**        In February 2022, the juvenile court vacated its December 2021 staffing order but ordered DCS to "continue to attempt to reach out to Father to determine if there is a means of telephonic or video visitation that can be facilitated." The court also granted Father's motion to continue the termination trial to May. Complying with the court's February order, DCS referred Father for telephonic visits with the daughters through a case aide, but Father could not be reached, and he failed to appear at the May pretrial hearing.

**¶11**        At trial, a DCS caseworker testified that Father had not maintained regular contact with the daughters for over a year and a half, despite DCS's repeated efforts to reach him and arrange visitation. The caseworker testified that Father sent one letter and a few gifts but failed to engage in phone conversation or in-person visitation.

**¶12**        The juvenile court found that DCS made reasonable efforts to finalize a permanency plan for the daughters. The court also found that DCS proved by clear and convincing evidence that Father abandoned his

daughters and "failed to maintain a normal parental relationship with [them] without just cause by failing to provide reasonable support, failing to maintain regular contact, and failing to provide normal supervision." The court terminated Father's parental rights on the abandonment ground and found termination was in the daughters' best interests. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A) and § 12-120.21(A)(1).

**DISCUSSION**

### I.  Statutory Ground

**¶13**    We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). On appeal, due process requires us to assess whether a reasonable factfinder could conclude, based on the record, that the state has met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48, 769 (1982). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (cleaned up). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶14**    To terminate the parent-child relationship, the juvenile court must find parental unfitness based on at least one statutory ground by clear and convincing evidence. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Abandonment is one such statutory ground, A.R.S. § 8-533(B)(1), and we determine abandonment based on a parent's conduct, not his subjective intent, *Michael J. v. ADES*, 196 Ariz. 246, 249, ¶ 18 (2000). The juvenile court must consider whether a parent has provided "reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.* at 249–50, ¶ 18; A.R.S. § 8-531(1). The court also considers whether the parent has taken steps to establish and strengthen bonds with the child. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 21 (App. 2010). The failure of a parent to maintain a "normal parent relationship" for six months is "prima facie evidence of abandonment." A.R.S. § 8-531(1).

**¶15**        Father did not establish or maintain a relationship with the daughters. At the time of the termination hearing, Father had not contacted the daughters in over a year. And before DCS filed the dependency action, Mother reported Father was not involved in the daughters' lives; he lived in a different state and failed to provide a reliable phone number and address for contact. Father argues he did not "consciously disregard" his parental responsibilities because his conduct shows he "wanted to be able to speak with them and maintain his relationship." But when "circumstances prevent the unwed father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Matter of Appeal in Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994) (citation omitted) (affirming the termination order based on abandonment because father "only asserted his interests in response to [termination] petition"). Father's intent to communicate is not enough to preserve the parent-child relationship. *See Michael J.*, 196 Ariz. at 249 (statutory standard measures abandonment by the parent's conduct, not his subjective intent).

**¶16**        The record supports the juvenile court's conclusion that Father abandoned the daughters under A.R.S. § 8-533(B)(1). We find no abuse of discretion.

## II.    Best Interests

**¶17**        Once the juvenile court finds a statutory ground of parental unfitness under A.R.S. § 8-533(B), it considers whether termination of parental rights is in the children's best interests. *Alma S. v. DCS*, 245 Ariz. 146, 149–50, ¶ 8 (2018). The court must prioritize the children's interest in stability and security. *Id.* at 150, ¶ 12; *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016).

**¶18**        We view the record in the light most favorable to upholding the best-interests finding and will affirm factual findings if reasonable evidence supports them. *Aleise H. v. DCS*, 245 Ariz. 569, 572, ¶ 9 (App. 2018). The juvenile court found termination was in the daughters' best interests because it would "further the case plan of adoption;" the daughters were "lingering in foster care, without any parent who is actively maintaining a relationship with them or working toward reunification;" and termination would provide them with a "safe and stable home free from substance abuse." We find no abuse of discretion. *See id.* at 571–72, ¶¶ 6, 10 (affirming the superior court's finding that continuation of parental rights would "delay permanency, leaving the children to linger in care for an

indeterminate period since the children do not have parents who are able to care for them").

**CONCLUSION**

¶19      We affirm the termination order.



AMY M. WOOD • Clerk of the Court
FILED:   AA