NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.W.

No. 1 CA-JV 22-0228
FILED 3-14-2023

---

Appeal from the Superior Court in Maricopa County
No. JS520211
The Honorable Sigmund G. Popko, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Denise L. Carroll Esq, Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Gabriela R., Chandler
*Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Daniel J. Kiley joined.

---

**M O R S E**, Judge:

¶1         Michael W. ("Father") appeals from the juvenile court's order terminating his parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Father and Gabriela R. ("Mother") are the biological parents of M.W. ("Child"), born in May 2015.  Father and Mother began an "on-again, off-again" relationship in 2014.  Mother moved in with Father's family after she became pregnant with Child, but Father and Mother never married.  At that time, Mother, Father, and Child lived in California.

¶3         In 2015, Father was convicted of child endangerment and resisting arrest after driving recklessly with Mother and Child in the car.  As to the child endangerment charge, the California court sentenced Father to 15 days in jail, placed Father on summary probation for four years, ordered him to complete 52 weeks of an approved parenting skills program, and issued a three-year protective order prohibiting Father from contacting Child.  Mother and Child then moved in with Mother's family.

¶4         The following year, in February 2016, Father's family moved from California to Arizona, but Father remained in California and lived with Mother and Child for a short time until Mother and Child moved out.  Mother petitioned for sole legal and physical custody of Child, and in June 2016, the California court granted Mother's petition.  That court ordered Father responsible for 50% of Child's health-care expenses and to complete at least 26 of 52 parenting classes before Father could request visitation with Child.  Father neither contested Mother's petition nor appeared at the custody hearing.  Father moved to Arizona in 2017.

¶5         Mother and Child also moved to Arizona in 2017 but moved back to California after a few months.  During that time, Father and Child had sporadic contact.  In 2018, Mother and Child moved to Arizona and began living with Father's family again.  In September 2018, while Mother and Child were living with Father's family, Father became violent, pushing his mother, breaking Mother's phone, and breaking other "things" in the house.  Father left the house, but Mother and Child continued to live with Father's family.  Mother ended her relationship with Father in October 2018 after he threatened to kill her and Child while he had a gun.

¶6         In March 2019, Mother married and moved in with her spouse a few months later.  Father did not have regular interaction with Child after Mother and Child moved to Arizona in 2018.  After Mother married, Child's

contact with Father's family lessened while Mother's new spouse ("Stepfather") became involved with raising and caring for Child.

**¶7** In September 2021, Mother petitioned to terminate Father's parental rights as to Child. The juvenile court accepted jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, appointed a guardian ad litem, ordered Mother to complete a social study, and set a termination hearing for June 2022. The social study revealed that (1) Father had not had contact with Child on a regular basis; (2) Mother provides Child with a safe home environment; and (3) Stepfather is committed to adopting Child upon termination.

**¶8** After a four-day hearing, the juvenile court found Mother had proved by clear and convincing evidence that Father abandoned Child. The court based its finding on Father's failure to (1) "pursue his legal rights and remedies" to maintain a parental relationship with Child; (2) provide reasonable support for Child; and (3) provide normal supervision and maintain regular contact with Child beyond those opportunities initiated by Mother. The court also found by a preponderance of the evidence that termination was in Child's best interests because Stepfather is willing to adopt Child and adoption would allow Child to be in a "loving and supportive environment" where all his needs are met.

**¶9** Father timely appealed the juvenile court's order. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶10** Parents have a fundamental right to the custody and control of their children, but that right is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). To terminate a parent's rights, a court must (1) find a statutory ground for termination under A.R.S. § 8-533 by clear and convincing evidence and (2) determine, by a preponderance of the evidence, that termination is in the child's best interests. *Id.* at 249, ¶ 12 (clear and convincing evidence); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005) (preponderance of the evidence); *see* A.R.S. § 8-533(B) (requiring at least one statutory ground and a best-interests finding). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we accept the court's findings of fact if reasonable evidence supports them and will affirm an order terminating parental rights unless it is clearly erroneous. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

## I.      Abandonment.

**¶11**      Parental rights may be terminated when a parent abandons a child.  A.R.S. § 8-533(B)(1).  Abandonment is defined in A.R.S. § 8-531(1):

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

**¶12**      Father first argues that he did not intend to abandon Child. But a petitioner does not have to prove an absent parent's intent and abandonment is measured by the absent parent's conduct.  *See Michael J.*, 196 Ariz. at 249-50, ¶ 18; *see also Kenneth B. v. Tina B.*, 226 Ariz. 33, 36-38, ¶¶ 15-16, 22 (App. 2010) (concluding a court could find abandonment despite an absent parent's subjective intent not to abandon a child).  The court did not err in basing its abandonment determination on Father's conduct.

**¶13**      Father also argues that the juvenile court violated his constitutional rights when it "failed to recognize the relationship" Father had with Child.  Relying on *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), Father argues that the court should have considered Mother's actions in undermining his relationship with Child.  But in *Calvin B.*, the mother interfered with the father's ability to develop a normal relationship with their child by violating a court-ordered visitation plan, and the father "actively sought more involvement" and pursued legal remedies despite the mother's efforts to restrict his access to their child.  *Id.* at 295, 297-98, ¶¶ 11, 22, 29.  In contrast, here the juvenile court found that Father "seemed quite content to accept" the limited contact he had with Child and admitted that he did not seek more parenting time from the courts.

**¶14**      Father further claims that he did not fail to provide reasonable support because Mother refused any financial support.  But Mother denied Father's claim and the court accepted Mother's testimony, finding that, although "Father had the financial ability to contribute" to Child's support, he "neither did so nor . . . offer[ed] to do so."  The court noted that Father "provided no documentary evidence" to support his claim of other expenditures, including clothing and shoes for Child, which were made

with credit cards not owned by Father. The court also noted that Father provided no evidence that he regularly contributed or offered to contribute to Child's food, health-care, or other living expenses. Because Father was gainfully employed and had the financial ability to contribute regularly to Child's expenses, the court concluded that Father's occasional gifts on birthdays and other special events did not constitute "reasonable support."

¶15 As to regular contacts, Father argues he had regular contact with Child via visits and "sleep overs" at Father's family's home. The court heard evidence that Father interacted with Child when Child visited with Father's family. But the court also heard evidence that "Father did not reach out to Child via telephone or electronic means," nor did he seek to maintain "regular contact" with Child beyond the opportunities offered by Mother and Father's family.

¶16 The court found Father's sporadic contacts with Child did not satisfy A.R.S. § 8-531(1), which requires Father to provide "normal supervision" and maintain a "normal parental relationship" with Child. The court heard uncontradicted evidence that "Father was not allowed to be alone with Child" and concluded "Mother was justified in insisting" on this requirement based on "Father's violent and erratic history and the California family court order." *See* A.R.S. § 8-533(C) ("Evidence considered by the court [under A.R.S. § 8-533(B)] shall include any substantiated allegations of abuse or neglect committed in another jurisdiction."). Further, the court considered Father's testimony that he "did not regularly seek information about Child's health, schooling, and general well-being," which the court noted "would be necessary to provide normal supervision."

¶17 Father claimed he completed 26 of the 52 required parenting classes and argues that Mother unilaterally denied him all future visitation. But the court found "Father did not assert his legal rights by seeking a modification of the California family court order to obtain parenting time." Instead, the court found Father failed to "vigorously assert his legal rights to the extent necessary" and did not persistently maintain a parent-child relationship with Child. *See Michael J.*, 196 Ariz. at 250, ¶ 22 (quoting *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994)). The court concluded that Father's failure to "vigorously" pursue his legal rights and remedies by seeking a normal parental relationship with Child—as opposed to passively accepting a role in Child's life equivalent to that of an "uncle or godfather"—strongly supported a finding that Father abandoned Child. *See id.* at 250-51, ¶¶ 22, 25 ("The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity.").

**¶18**　　　　We do not reweigh the evidence considered by the juvenile court. *Oscar O.*, 209 Ariz. at 336, ¶ 14. Although contested, reasonable evidence supported the court's finding that Father abandoned Child. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (noting a court's findings of fact are clearly erroneous when there is "no reasonable evidence to support them").

## II.　　Best Interests.

**¶19**　　　　Termination is in a child's best interests "if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶¶ 12-13 (2018) ("The 'child's interest in stability and security' must be the court's primary concern." (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016))). The best-interests finding "focuses primarily upon the interests of the child, as distinct from those of the parent." *Kent K.*, 210 Ariz. at 287, ¶ 37. Father argues that termination is not in the best interests of Child because Child deserves to have Father in his life to teach Child "hard work and determination" and Child would be denied a relationship with Father's family. Father asserts that Child could benefit from having both a father and stepfather and suggests that because he maintained a loving relationship with Child before Mother petitioned for termination, there would be no detriment to Child if Father remained in Child's life. Thus, Father argues that termination is not in Child's best interests because Mother failed to show Child would derive an affirmative benefit from termination.

**¶20**　　　　But a "current adoptive plan is one well-recognized example" of a benefit of termination. *Oscar O.*, 209 Ariz. at 334, ¶ 6; *see Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) ("One factor the court may properly consider in favor of [termination] is the immediate availability of an adoptive placement."). The court found "Stepfather is ready, willing, and able to adopt Child" and that Child is currently in a "loving and supportive environment" where all his needs are met. The court also credited the observations included in the social study that Mother has been Child's primary caregiver and Child recognizes Stepfather as his father. Thus, the court did not clearly err in finding, by a preponderance of the evidence, that termination was in Child's best interests based on Stepfather's desire to adopt Child. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (stating that the court will affirm a termination order if it is supported by reasonable evidence in the record).

## CONCLUSION

¶21        We affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:    AA