NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.H.

No. 1 CA-JV 22-0234
FILED 3-28-2023

Appeal from the Superior Court in Maricopa County
No. JD15644
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Bailey Leo
*Counsel for Appellee Department of Child Safety*

Rothman Law PLLC, Phoenix
By Kristen A. Rothman
*Counsel for Appellee J.H.*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Anni Hill Foster joined.

---

**H O W E**, Judge:

**¶1**　　　　Tatiana G. ("Mother") appeals the juvenile court's order terminating her parental rights to J.H. on the ground of abandonment. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Mother has several children with various fathers. The children have been involved in dependency proceedings with the Department of Child Safety beginning in 2007. Since then, the Department has received reports containing allegations that the children lived in unsanitary conditions, Mother had been violent toward the children, and she had exposed them to her abusive partners. On one occasion, Mother had pushed one of her daughters, T.L., down the stairs, chipping the child's tooth.

**¶3**　　　　In 2011, Mother had J.H. with Jason H. ("Father"); they were unmarried. In 2016, the Department removed J.H. and his half-sister from Mother's care after she had left them with his half-sister's paternal grandparents because she "struggl[ed] with mental issues" and "needed a break." The Department petitioned for the dependency of J.H. and his half-sister based on neglect; the Department later separately petitioned for the dependency of his other siblings based on abuse and neglect. The court found J.H. dependent as to Mother and Father and adopted a family reunification case plan. J.H. then lived with his half-sister's paternal grandparents, who expressed interest in adopting him.

**¶4**　　　　Meanwhile, the Department offered Mother reunification and mental-health services, but she failed to participate or maintain contact with the Department. Mother did, however, undergo a psychiatric evaluation, which showed that she had bipolar disorder, intermittent explosive disorder, and alcohol-use disorder. Mother admitted that she did not seek to treat her mental illness through therapy or medication.

**¶5** In late 2017, Father moved to have J.H. returned to his care. The court granted the motion, finding that he completed reunification services and demonstrated that he could safely parent J.H., while Mother had not. The court entered temporary orders, also applicable in a family court matter, awarding Father sole legal decision-making authority and allowing Mother only supervised parenting time. The dependency case was dismissed in April 2018.

**¶6** J.H. then lived with Father and Chrystle H., his paternal grandmother ("Grandmother"). Soon after the dependency was dismissed, Grandmother scheduled a two-hour visit between Mother and J.H. Mother did not show up. They rescheduled, and Mother stayed for only 90 minutes. Grandmother then attempted to schedule weekly visits, but Mother did not consistently respond to her calls. Eventually, Mother had another supervised visit with J.H. in May 2018. After only 30 minutes, Mother stated that she was "ready to go." No other in-person visits took place.

**¶7** In 2021, Father died, and J.H. continued to live with Grandmother. J.H. did well in Grandmother's care, performing well in school and receiving necessary medical attention. Grandmother petitioned for guardianship of J.H., and Mother objected. In January 2022, the Department petitioned for J.H.'s dependency based on abandonment and mental illness. The court ordered visitation with Mother at J.H.'s discretion. At that point, Mother had not had contact with J.H. since May 2018. J.H. did not wish to have contact with Mother because he was uncomfortable with her and feared returning to her care. But the Department encouraged Mother to write him letters.

**¶8** The court again found J.H. dependent as to Mother. Between February 2022 and April 2022, Mother had two visits with J.H., which were virtual at J.H.'s request. Around this time, Mother and T.L. got into an argument and Mother again assaulted T.L., who was hospitalized with injuries to her face, noticeable bite marks and bruises on her arms, and road rash on her arm and lower body. J.H. declined additional visits with Mother.

**¶9** The court held a dependency disposition hearing and changed the case plan to termination and adoption. The Department later moved to terminate Mother's rights to J.H. alleging abandonment. At the termination adjudication, Mother testified that she did not financially support J.H. between the dismissal of the previous dependency and the petition for the second one. She admitted that she "wasn't able to" send him cards, gifts, or letters because she did not know where J.H., Father, and

Grandmother lived. When asked why she did not have more visits with J.H., she testified that she tried calling Grandmother's house "[h]ere and there," but no one picked up. She added that when the first dependency case was dismissed, she had tried enforcing her parenting time rights but did not have Father's address. Mother also testified that she participated in services in a separate dependency case and was willing to participate in services in J.H.'s case.

¶10 Grandmother testified that after the first dependency case was dismissed, she initiated visitation between Mother and J.H. She tried to schedule weekly visits, but Mother did not always respond. Two in-person visits took place in April and May 2018. She testified that Mother never reached out to schedule more visits after May 2018.

¶11 The Department case manager testified that it had scheduled a bonding assessment to help Mother and J.H. mend their relationship. J.H. was present for his portion of the assessment, and Mother rescheduled. Mother did not attend the rescheduled assessment. The case manager testified that after both virtual visits with Mother in 2022, J.H. showed uncharacteristic "outbursts of frustration." She added that learning of Mother's assault on T.L. did not cause J.H. to fear Mother but confirmed the "fear that he had previously."

¶12 The court terminated Mother's parental rights on the abandonment ground. The court found Grandmother's testimony more credible than Mother's on the issue of Mother's participation, or lack thereof, in visits. The court also found termination in J.H.'s best interests. Mother timely appeals.

**DISCUSSION**

¶13 Mother argues that the juvenile court erred in terminating her rights to J.H. based on abandonment.[1] A juvenile court's termination determination is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). Because the juvenile court is in the "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination

---

[1] Mother does not challenge the court's best interests determination; thus, we assume that she concedes the finding as accurate. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960). The appellate record also supports the best interests determination.

decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

**¶14**        To terminate parental rights, the juvenile court must find the existence of at least one statutory ground under A.R.S. § 8–533 by clear and convincing evidence and must find that termination is in the child's best interests by a preponderance of the evidence. A.R.S. § 8–533(B); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). One such ground is abandonment, A.R.S. § 8–533(B)(1), which means

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment,

A.R.S. § 8–531(1).

**¶15**        A finding of abandonment requires the court to consider whether a parent has (1) provided reasonable support to the child, (2) maintained regular contact with him, and (3) provided normal supervision. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37 ¶ 18 (App. 2010). A parent's conduct determines abandonment, not a parent's subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000). Such conduct includes a parent asserting "legal rights at the first and every opportunity." *Id.* at 251 ¶ 25. Even when a parent cannot exercise traditional methods to bond with the child, that parent "must act persistently to establish the relationship however possible and must vigorously assert [her] legal rights to the extent necessary." *Id.* at 250 ¶ 22 (quoting *In re Pima Cnty. Juv. Sev. Action No. S–114487*, 179 Ariz. 86, 97 (1994)).

**¶16**        Here, reasonable evidence supports terminating Mother's parental rights based on abandonment. Mother did not have contact with J.H. from May 2018 through January 2022, when the Department again petitioned for his dependency. This is far longer than the six-month statutory prima facie requirement. Right after the first dependency case was dismissed, Grandmother had provided Mother opportunities to visit J.H. Mother had only two in-person visits with him and failed to schedule more.

**¶17**        During this time, and after the commencement of the second dependency case, Mother never financially supported J.H. Nor did she send

him cards, gifts, or letters. *See Kenneth B.*, 226 Ariz. at 37 ¶ 20. After this second dependency action commenced, Mother had only two virtual visits with him. J.H. agreed to participate in a bonding assessment with Mother, which was to help mend their relationship. But she canceled the first appointment and did not attend the second. Her lack of conduct to parent and establish a relationship with J.H. is reflected in the record.

**¶18**    Mother cites *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), and argues that Father ignored her efforts to contact J.H. Unlike the father in *Calvin B.*, Mother here did not show that Father prevented her from contacting J.H. or that she "actively sought more involvement" with him than Father would allow. *Cf. id.* at 297 ¶¶ 22–23 (despite mother's attempts to prevent father from seeing son, reversal of abandonment finding was warranted because father "continued to seek visits," managing about 10 visits a year). Although the court awarded Father sole legal decision-making authority, it awarded Mother parenting time that she failed to exercise. The record supports a finding that beginning April 2018, Grandmother provided Mother opportunities for weekly visitation with J.H. Mother, however, did not seek additional visits beyond the two, with the second in May 2018. She did not provide evidence to show that Father prevented her from seeing J.H. or having a normal parental relationship with him.

**¶19**    Mother notes that she tried to enforce her parenting time orders after the first dependency was dismissed but was "rebuffed" because she did not have Father's address. But his address was listed in court documents from the first dependency, and Mother admitted that she did not seek assistance from the family court to obtain the information. Moreover, in a February 2022 report, the Department noted that since the end of the first dependency, Mother had not made "any effort through the family court process to modify her parenting time or provide for [J.H.'s] needs." Even if Mother's contention about her attempts is true, she could have contacted Grandmother to schedule visitation with J.H. Grandmother had testified about her attempts to help establish visitation. And the court found Grandmother's testimony more credible than Mother's as it related to Mother's "lack of interest in the visits." *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4, 282 ¶ 12 (App. 2002) (we defer to the juvenile court's credibility findings to resolve conflicts in evidence). The record does not show that Mother vigorously asserted her legal rights.

**¶20**    Mother claims that the Department "poisoned" her effort to reconcile with J.H. by telling him about her assault of T.L. The Department argues that the Department did not tell J.H. about the assault. Regardless

who informed J.H., Mother's own conduct—her lack of contact for more than three years, failure to participate in a bonding assessment to mend their relationship, and lack of financial and emotional support—still supports the court's finding that she abandoned J.H. Even if the Department had informed J.H. of Mother's most recent assault of T.L., such conduct would not preclude termination of Mother's parental rights. *See Michael J.*, 196 Ariz. at 251 ¶ 25 (stating that the Department owes no duty to a parent to ensure her parental rights are not severed). Moreover, J.H. had already been uncomfortable with Mother and feared returning to her care, which is why visitation had been at his discretion. The case manager even testified that learning about the assault only confirmed the "fear that he had previously."

**¶21** Mother argues last that she participated in services after the Department petitioned for dependency of her other children and would make a similar effort in J.H.'s case. But proving abandonment to terminate parental rights does not require weighing the services in which the parent participates. *Cf. Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 510 ¶ 11 (App. 2008) (stating that a parent need not "be provided reunification services before the court may terminate the parent's rights on the ground of abandonment"). Further, the court looks to a parent's conduct, not subjective intent, in determining whether a parent had abandoned her child. *Michael J.*, 196 Ariz. at 249 ¶ 18.

**¶22** Because reasonable evidence supports the juvenile court's termination decision, the court did not err.

**CONCLUSION**

**¶23** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA